UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN WHITFIELD,<br><br>        Plaintiff,<br><br>v.<br><br>KHALIB SALEH, *et al.*,<br><br>        Defendants. | Case No. 1:22-cv-00141-KES-CDB<br><br>FIRST SCREENING ORDER REQUIRING A RESPONSE FROM PLAINTIFF<br><br>(Doc. 1)<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND<br><br>(Doc. 37)<br><br>**21-DAY DEADLINE** |

      Plaintiff Steven Whitfield ("Plaintiff"), proceeding pro se and *in forma pauperis*, initiated this action with the filing of a complaint on February 2, 2022. (Docs. 1, 4). On February 24, 2023, the Court directed the United States Marshal to serve service documents upon individual Defendants Kimberly Long and Darrell Long ("individual Defendants") and Defendant Khalib Saleh, owner of CaliMex Supermarket ("Defendant" or "Saleh"). (Doc. 16). Summons returned executed were filed on May 3, 2023, with all responses to the complaint due on May 16, 2023. (Doc. 18). Individual Defendants filed their unopposed motion to dismiss on June 6, 2023.[1] (Doc. 23). Thereafter, Plaintiff filed a motion for leave to amend (Doc. 37) and therewith lodged a proposed first amended complaint (Doc. 38) on May 6, 2025. Individual Defendants opposed the motion to amend on May 19, 2025. (Doc. 40).

///

---

[1] The undersigned has issued findings and recommendations, now pending disposition before the assigned district judge, to grant individual Defendants' motion to dismiss Plaintiff's state law claims against the individual Defendants. (Doc. 42).

**I.      Screening Requirement**

Plaintiff has been granted status to proceed *in forma pauperis* in this action. (Doc. 4). *See* 28 U.S.C. § 1915(a) (authorizing the commencement of an action "without prepayment of fees or security" by a person who is unable to pay such fees). Pursuant to 28 U.S.C. § 1915(e)(2)(B), federal courts must screen *in forma pauperis* complaints and dismiss any case that is "frivolous or malicious," "fails to state a claim on which relief may be granted" or seeks monetary relief against an immune defendant. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (*en banc*) ("[S]ection 1915(e) not only permits but requires a district court to dismiss an [IFP] complaint that fails to state a claim."); *see also id.* at 1129 ("section 1915(e) applies to all *in forma pauperis* complaints, not just those filed by prisoners.").

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief…" Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *See Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Pleadings by self-represented litigants are to be liberally construed. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n .9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted).

///

///

## II. Plaintiff's Allegations[2]

In the operative complaint,[3] Plaintiff asserts seven claims for relief, including: disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq*. (Count 1); violation of California's Unruh Civil Rights Act ("Unruh Act") (Count 2); violation of California's Disabled Persons Act ("CDPA") (Count 3); respondeat superior (Count 4); premises liability (Count 5); res ispa loquitur (Count 6); and intentional/negligent infliction of emotional distress (Count 7). (Doc. 1 at 11-13). Plaintiff also asserts supplemental state law personal injury claims under California Civil Code Section 714 against Defendants. (*Id.* at 13-15).

Plaintiff alleges that, as an individual "with significant related mobility[,]" he was denied "the full and equal enjoyment of the goods" and "services" of CaliMex Supermarket on the basis of his disability due to "architectural barriers" and Defendants' policies and practices "that result in a[n inaccessible] supermarket … in violation of the [ADA] and [the CDPA]." (*Id.* at 6). He alleges that Defendants "have ha[d] substantial notice that the issues alleged in [his c]omplaint violates the ADA and various state disability laws" and "as of the date of filing [the c]omplaint Defendants have not taken any corrective actions towards remedying the problem as … alleged." (*Id.*). The complaint asserts that subject matter jurisdiction attaches under Title III of the ADA and that the Court "has supplemental [jurisdiction] over the state law claims pursuant to 28 U.S.C. Section 1367, because these claim[s] are so related to the ADA claims[.]" (*Id.* at 7). The complaint alleges that the Court has personal jurisdiction over Defendants "because [CaliMex] Supermarket, lessee [and] lessor are both citizens of the County of Kern[.]" (*Id.*).

The complaint alleges that CaliMex Supermarket violates the ADA based on its inaccessible restrooms and lack of designated handicap parking spaces at the facility. (*Id.* at 8, 11). Specifically, Plaintiff alleges the restrooms are inaccessible "because they are too small, contain inaccessible fixtures, or are closed altogether" as the restrooms lack handicap signage and railings. (*Id.* at 8). "These features, individually and together, deny individuals with mobility disabilities the

---

[2] References to the complaint herein are to the CM/ECF-assigned page number.

[3] The undersigned accepts Plaintiff's allegations in the complaint as true only for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

opportunity to safely and independently use the restroom facilities[.]" (*Id.*). As to the parking spaces, Plaintiff alleges there are an "insufficient number of handicap parking spaces" and "individuals such as Plaintiff who are dependent on handicap parking spaces face significant difficulty when attempting to visit Defendant's store." (*Id.*). Plaintiff also alleges the store's sinks "are too high" and the "sink pipes are not insulated" such that "individuals as Plaintiff could be burned by scalding pipes[.]" (*Id.*). He alleges that "the failure to remove architectural barriers, failure to provide any []handicap parking spaces whatsoever, signage and communication barriers … in existing facilities, and transportational barriers in existing vehicles" constitutes Defendants' lessee and lessor's discrimination against him. (*Id.*).

Counts 1, 2, and 3 are asserted against Defendant "lessee and lessor" of CaliMex Supermarket for discrimination on the basis of disability under the ADA (Count 1), violation of the Unruh Act (Count 2), and for violation of the CDPA (Count 3). (*Id.* at 11). The complaint identifies Defendant Khalib Saleh as the owner of CaliMex Supermarket and also an unknown Defendant as "lessee to [Defendant] Khalib Saleh—[l]essor and owner and operator [of CaliMex]." (*Id.* at 2).

In Count 4, Plaintiff asserts that Defendant Kimberly Long is liable under the doctrine of res ispa loquitor as Long "was in exclusive control of her vehicle that caused Plaintiff's injuries and damages" which "would not have ordinarily occurred but for [her] negligence and" were "not due to [Plaintiff's] actions or contribution." (*Id.* at 12).

In Count 5, Plaintiff asserts a premises liability claim against Defendant lessee and lessor of CaliMex Supermarket and alleges that the "premises was a dangerous and/or a hazardous condition at the time of the injuries and damages and were the cause[] or contributed to Plaintiff's injuries and damages" and "Plaintiff has sustained grievous injury to his body and mind … as a direct result[.]" (*Id.*).

In Count 6, Plaintiff asserts Defendants lessee and lessor of CaliMex Supermarket and Long are liable under the doctrine of res ispa loquitor and reasserts allegations in Count 4 that Long "was in exclusive control of the vehicle … that caused Plaintiff's injuries and damages." (*Id.*).

In Count 7, Plaintiff asserts an intentional/negligent infliction of emotional distress claim against Defendants lessee and lessor and alleges both Defendants "were negligent" and their

4

conduct "was reckless and outrageous." (*Id.*).

In the claim labeled "supplemental state law personal injury claims general negligence of Defendants," Plaintiff asserts a personal injury/property damage claim against Defendants Kimberly Long as the driver of the vehicle, Darrell Long as the owner of the vehicle, and CaliMex Supermarket and its servants, agents, and employees. (*Id.* at 13). He alleges that Darrell Long "had a common law duty to only 'entrust' his motor vehicle to be driven by another who possessed the skill, experience and carefulness to make a car collision likely[.]" (*Id.*). He further alleges that Defendant Khalib Saleh "had a legal duty to make his property safe patronage and eliminate any known dangerous conditions existing on the property" as the particular location of the business is "overcrowded" and "a safety hazard and/or a dangerous condition to members of the general public and prospective patrons" of the business. (*Id.* at 13, 14). He alleges that on February 5, 2021, he "suffered an automobile accident" with Defendant Kimberly Long at the place of business and that prior to the accident, Plaintiff took a friend to the business "at least [four] times[.]" (*Id.* at 14). He alleges that on the date of the accident, Defendant CaliMex Supermarket "allowed his employee(s) to illegally park on the blacktop" near the business "to avoid any … damages to their vehicles while at work[.]" (*Id.* at 15).

Plaintiff seeks damages under the Unruh Civil Rights Act, the Persons with Disabilities Act, declaratory and injunctive relief, $7,500 in property damages, $7,000 in personal injury damages, $7,000 for negligent infliction of emotional distress and negligent entrustment, and for attorney's fees and costs. (*Id.* at 15-16). The complaint is signed and dated January 28, 2022. (*Id.* at 16).

**III.   Discussion**

    **A.   American with Disabilities Act ("ADA")**

        **1.   ADA Governing Law**

The ADA was enacted in response to a "compelling need" for a "clear and comprehensive national mandate" to eliminate discrimination against disabled individuals. *PGA Tour, Inc. v. Martin*, 532 U.S. 557, 577 (2009). "To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)." (*Id.*) Title

III of the ADA prohibits discrimination against persons with disabilities and provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The ADA requires business facilities be "readily accessible to and usable by individuals with disabilities," unless it would be "structurally impracticable." 42 U.S.C. § 12183(a)(1); *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011). "In general, a facility is readily accessible to and usable by individuals with disabilities if it meets the requirements promulgated by the Attorney General in the 'ADA Accessibility Guidelines,' or the 'ADAAG.'" *Oliver*, 654 F.3d at 905. These standards are codified at 28 C.F.R. Pt. 36, Appendix A, and are "essentially an encyclopedia of design standards." (*See id.*).

For purposes of Title III, discrimination also includes "a failure to remove architectural barriers … in existing facilities … where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv).

The Ninth Circuit has articulated the elements of an ADA discrimination claim as follows:

> To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability.

*Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). A plaintiff need not show intentional discrimination to establish an ADA violation. *Lentini v. California Ctr. for the Arts, Escondido*, 370 F.3d 837, 846 (9th Cir. 2004).

### 2. ADA Standing

A court's jurisdiction "is to be assessed under the facts existing when the complaint is filed." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.4 (1992). Consequently, "[t]he requisite personal interest"—standing—"must exist at the commencement of the litigation." *Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc.*, 528 U.S. 167, 214 (2000) (citation omitted); *see Langer v. Kiser*, 57 F.4th 1085, 1098 (9th Cir. 2023) ("standing ordinarily depends on the facts that

exist at the time the complaint is filed") (internal quotation and citation omitted); *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 850 (9th Cir. 2007) (the court "must consider the facts as they existed at that time the complaint was filed").

To show standing, a plaintiff "must demonstrate that he has suffered an injury-in-fact, that the injury is traceable to the [defendant's] action, and that the injury can be redressed by a favorable decision." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc). An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent' not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560 (internal citations omitted). An injury is "concrete and particularized" when a plaintiff suffers discrimination due to architectural barriers at a public accommodation and those barriers have deterred plaintiff from returning. *Doran v. 7-Eleven*, 524 F.3d 1034, 1041 (9th Cir. 2008).

A plaintiff suffers an "actual and imminent" injury under the ADA when he alleges "(1) that he visited an accommodation in the past; (2) that he was currently deterred from returning to the accommodation because of ADA violations; and (3) that he would return if the ADA violations were remedied." *Doran*, 524 F.3d at 1041 (citing *Molski v. Arbys Huntington Beach*, 359 F. Supp. 2d 938, 947 (C.D. Cal. 2005)). For standing purposes, an ADA plaintiff must allege sufficient facts to demonstrate that an accessibility barrier "interfere[s] with [his] 'full and equal enjoyment' of the facility" in question. *Chapman*, 631 F.3d at 947 (quoting 42 U.S.C. § 12182(a)). A barrier amounts "to such interference if it affects the plaintiff's full and equal enjoyment of the facility on account of his particular disability." *Id*.

The ADAAG "establish[ ] the technical standards required for 'full and equal enjoyment.'" *Id*. If a barrier violating the ADAAG standards "relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA. That discrimination satisfies the 'injury-in-fact' element." *Id*.

### 3. Analysis

Plaintiff asserts claims for violations under Title III of the ADA, namely for discrimination on the basis of a disability in Count 1, violation of the Unruh Act predicated upon the ADA violation in Count 2, and violation of the CDPA predicated upon the ADA violation in Count 3 against

7

1    Defendants "lessee[, who is not identified,] and lessor[, *i.e.*, Saleh.]" (Doc. 1 at 11); (*see id.* at 2).

2    Upon preliminary screening of the complaint, it appears Plaintiff sufficiently alleges that he
3    is disabled within meaning of the ADA as "a person with disabilities" with "physical impairments
4    that substantially limits one or more of his major life activities" and "is forced to use a [four-
5    wheeled walker] for mobility[.]" (*Id.* at 7); (*see id.* at 8 ["Plaintiff is disabled as that term is defined
6    by Title III of the ADA."] and 9 ["Plaintiff's physical and medical impairments substantially
7    affect[] a major life activity, such as walking (unless aided by a four-wheeled walker), and with
8    significant lack of dexterity in both legs or performing manual tasks and therefore qualifying as a
9    disability."]).  *See Daubert v. Lindsay Unified Sch. Dist*., 760 F.3d 982, 984 (9th Cir. 2014)
10   (plaintiff who uses wheelchair for mobility is disabled under ADA).  Plaintiff also sufficiently
11   alleges that Defendant Saleh and the unnamed lessee are private entities that own, lease, or operate
12   CaliMex Supermarket.  (*Id.* at 8) ("Defendant-lessee of [CaliMex] Supermarket and its building
13   owner-lessor [Defendant Saleh] discriminated against Plaintiff[.]"); (*see id.* at 9) ("[CaliMex]
14   Supermarket is a private entity that is owned, leased, or operated as a place of public
15   accommodation.").  Thus, the first two factors to state a Title III ADA claim are sufficiently alleged.
16   *Molski*, 481 F.3d at 730.

17   However, the undersigned finds Plaintiff has failed to adequately allege that he was denied
18   public accommodations by Defendant Saleh and the unnamed lessee because of his disability and
19   fails to demonstrate standing as to the ADA claims.

20   Regarding Defendant's parking spaces that Plaintiff claims violate the ADA, Plaintiff
21   alleges that he visited Defendant's store location "at least 4 times before the February 5, 2021 car
22   accident," and that during those visits, his passenger (Ms. Thompson) entered the store and
23   completed her shopping within a short time.  (Doc. 1 at 14).  The fact that Plaintiff has completed
24   at least five successful shopping visits to Defendant's premises undermines his contrary allegations
25   that the nature and number of handicap parking spaces at that location present a "significant
26   difficulty" (*id*. at 8) in Plaintiff's ability to park at or to access Defendant's store.  *See Sacco v.*
27   *Mouseflow, Inc.*, No. 2:20-cv-02330-TLN-KJN, 2022 WL 4663361, at *2 (E.D. Cal. Sept. 30,
28   2022) ("Though a Court must generally accept allegations in a complaint as true at the motion to

dismiss stage, the Court need not accept inconsistent allegations in a complaint as true.") (citing cases). Further, Plaintiff's allegations are phrased as "individuals such as Plaintiff" are challenged by Defendant's parking spaces - not that Plaintiff himself, in fact, actually encountered difficulty when attempting to visit Defendant's store on any particular occasion. *See Lujan*, 504 U.S. at 560 (noting that plaintiff must suffer an injury that is "concrete and particularized," not conjectural or hypothetical). Thus, because Plaintiff's allegations undermine that he was or is deterred from returning to Defendant's store because of ADA violations and that he would return if the ADA violations were remedied, and because Plaintiff's allegations are general and conclusory, Plaintiff fails to adequately plead standing to bring an ADA claim based on Defendant's parking spaces. *Doran*, 524 F.3d at 1041.

Regarding Defendant's allegedly inaccessible restrooms, there are no allegations in the complaint from which the Court reasonably can infer that Plaintiff *himself* attempted to but was unable to adequately access the restrooms. As noted above, Plaintiff's allegations appear to indicate that only his passenger (Ms. Thompson) exited his vehicle and conducted shopping during Plaintiff's visits to Defendant's store. Also, like his allegations regarding Defendant's parking spaces, Plaintiff pleads only in general terms that the nature of Defendant's restrooms "deny individuals with mobility disabilities the opportunity" to use the restrooms - not that he attempted to access and was denied use of a restroom on any specific occasion, or that he is deterred from entering and shopping at Defendant's store because of inaccessible restrooms. Similarly, Plaintiff pleads only that "individuals as Plaintiff could be burned by scalding pipes" due to their lack of insulation, not that Plaintiff actually ever was in close proximity to uninsulated pipes in Defendant's restrooms or that he was deterred from using Defendant's store restrooms because of uninsulated pipes.

Thus, the undersigned finds Plaintiff has failed to cognizably plead, and establish standing to plead, an ADA claim in Count 1 against Defendant Saleh and the unnamed lessee.

**B.      Unruh Act**

        **1.      Governing Law**

Count 2 asserts a claim under the Unruh Act predicated on the ADA violation asserted in Count 1 of Plaintiff's complaint. "The Unruh Act has been described as 'coextensive with the ADA,' and in the disability context, 'operates virtually identically to the ADA.'" *Arafiles v. Safeway, Inc.*, No. 2:24-cv-02801-TLN-SCR, 2025 WL 457834, at *2 (E.D. Cal. Jan. 27, 2025) (citing *Molski*, 481 F.3d at 731). "As the Unruh Act allows for monetary damages, 'litigants in federal court in California often pair state Unruh Act claims with federal ADA claims.'" *Id.*; *see Williams v. Amazone.com Inc.*, No. 2:20-cv-513-JDP PS, 2020 WL 5909060, at *1 (E.D. Cal. Oct. 6, 2020) ("[A]ny violation of the ADA necessarily constitutes a violation of the Unruh Act.").

Under 28 U.S.C. § 1367(a), a court that has original jurisdiction over a civil action "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The Ninth Circuit has concluded that ADA and Unruh Act claims that derive from a common nucleus of operative fact "form part of the 'same case or controversy' for purposes of § 1367(a)." *Arroyo v. Rosas*, 19 F.4th 1202, 1209 (9th Cir. 2021).

However, even where supplemental jurisdiction over a claim exists under § 1367(a), the Court may decline jurisdiction over the claim if:

> (1) the claim raises a novel or complex issue of State law,
> 
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> 
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> 
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

§ 1367(c)(1)-(4).

Pertinent here, a court deciding whether to apply § 1367(c)(4) must undertake "a two-part inquiry." *Arroyo*, 19 F.4th at 1210. "First, the district court must articulate why the circumstances of the case are exceptional within the meaning of § 1367(c)(4)." *Id.* (citations and internal quotation marks omitted). "Second, in determining whether there are compelling reasons for declining jurisdiction in a given case, the court should consider what best serves the principles of economy,

10

convenience, fairness, and comity which underlie the pendent jurisdiction doctrine articulated in [*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966)]." *Id.* (citations and internal quotation omitted).

After considering § 1367(c)(4) and California's requirements for bringing Unruh Act claims, "numerous district courts in California 'have declined to exercise supplemental jurisdiction over Unruh Act . . . claims brought alongside ADA claims.'" *Block v. Cal.-Fresno Invest. Co.*, No. 1:22-cv-1419 JLT SAB, 2023 WL 8675398, at *4 (E.D. Cal. Dec. 15, 2023) (quoting *Rutherford v. Nuway Ins. Agency Inc.*, No. SACV 21-00576-CJC-JDE, 2021 WL 4572008, at *1 (C.D. Cal. Apr. 1, 2021)). Underlying these decisions is "the recent confluence of several California-law rules [that] have combined to create a highly unusual systemic impact on ADA-based Unruh Act cases that clearly threatens to have a significant adverse impact on federal-state comity." *Arroyo*, 19 F.4th at 1211.

Notably, Congress adopted the ADA to address the discrimination encountered by persons with disabilities, providing a private cause of action to seek injunctive, but not monetary, relief. *See id.* at 1205 (discussing background and relief available under the ADA). And the Unruh Act likewise prohibits disability discrimination, containing a provision, Cal. Civ. Code § 51(f), stating that a violation of the ADA also violates the Unruh Act. However, unlike the ADA, the Unruh Act allows a plaintiff to recover "up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars." Cal. Civ. Code § 52(a).

In response to perceived abuses of the Unruh Act, California has enacted requirements for bringing such claims, which requirements the Ninth Circuit has assumed, without deciding, "apply only in California state court." *Vo v. Choi*, 49 F.4th 1167, 1170 (9th Cir. 2022). For example, provisions were added (1) regarding the contents of demand letters, Cal. Civ. Code § 55.31; (2) imposing heightened pleading requirements, Cal. Civ. Code § 425.50(a); and (3) requiring an additional filing fee of $1,000 for so called "high-frequency litigants," Cal. Gov't Code § 70616.5(b), *see* Cal. Civ. Code § 425.55(b) (defining a high-frequency litigant to include "[a] plaintiff who has filed 10 or more complaints alleging a construction-related accessibility violation

11

1  within the 12-month period immediately preceding the filing of the current complaint alleging a
2  construction-related accessibility violation").

3  All of these requirements[4] apply to claims alleging a construction-related accessibility
4  violation, defined as involving "a provision, standard, or regulation under state or federal law
5  requiring compliance with standards for making new construction and existing facilities accessible
6  to persons with disabilities," including those related to the ADA. Cal. Civ. Code § 55.52(a)(1), (6);
7  *see* Cal. Civ. Code § 55.3(a)(2). By enacting such restrictions, California has expressed a "desire
8  to limit the financial burdens California's businesses may face from claims for statutory damages
9  under the Unruh Act." *Arroyo*, 19 F.4th at 1209 (internal quotations omitted). However, "Unruh
10 Act plaintiffs have evaded these limits by filing in a federal forum in which [they] can claim these
11 state law damages in a manner inconsistent with the state law's requirements." *Id.* at 1213 (internal
12 quotation omitted). Consequently, "the procedural strictures that California put in place have been
13 rendered largely toothless, because they can now be readily evaded." (*Id.*)

14 The Ninth Circuit has provided substantial guidance on this issue in *Vo v. Choi* in affirming
15 a district court's order denying supplemental jurisdiction over an Unruh Act claim under §
16 1367(c)(4). *Vo*, 49 F.4th at 1168. In that case, the district court declined supplemental jurisdiction
17 over the Unruh Act claim after giving the plaintiff the opportunity to respond and before addressing
18 the merits of the case. *Id.* at 1168-69. In reviewing the district court's decision, the Ninth Circuit
19 held that the district court sufficiently explained why the circumstances of the case were exceptional
20 under § 1367(c)(4), agreeing with the district court that "it would not be 'fair' to defendants and
21 'an affront to the comity between federal and state courts' to allow plaintiffs to evade California's
22 procedural requirements by bringing their claims in federal court." *Id.* at 1171. The Court also
23 affirmed the district court's finding that the balance of the *Gibbs* values—economy, convenience,
24 fairness, and comity—provided compelling reasons to decline supplemental jurisdiction, stating
25 that "the district court [properly] analyzed Vo's situation under the *Gibbs* values and determined
26 that the values of fairness and comity favored not retaining jurisdiction over the claim." *Id.* at 1172.
27 Accordingly, "[g]iven these very real concerns, in addition to the deferential standard of review,
28

---

[4] Cal. Civ. Code § 55.31(a); Cal. Civ. Code § 425.50(a); Cal. Gov't Code § 70616.5(a).

1 [the Ninth Circuit saw] no reason to hold that the district court abused its discretion in determining
2 there were compelling reasons to decline jurisdiction over the Unruh Act claim." *Id.*

3 With these legal standards in mind, the Court addresses whether the relevant considerations
4 of § 1367(c)(4) warrant declining the exercise of supplemental jurisdiction over Plaintiff's Unruh
5 Act claim, assuming Plaintiff adequately remedies in an amended complaint the above-noted
6 deficiencies in the pleading of his ADA claim.

### 2. Analysis

8 The Court begins with the first part of the two-step inquiry under § 1367(c)(4)—whether
9 the circumstances here are exceptional. *Vo*, 49 F.4th at 1171.

10 As discussed above, California has enacted various requirements that apply to claims
11 alleging a construction-related accessibility violation. And if the Court were to exercise jurisdiction
12 over Plaintiff's Unruh Act claim, Plaintiff would be permitted to avoid these requirements. *See*
13 *Arroyo*, 19 F.4th at 1213 (noting that potential evasion of California's requirements met
14 exceptional-circumstances prong of § 1367(c)(4)). Further, such evasion would undermine
15 California's policy interests in enforcing its requirements—providing monetary relief but limiting
16 burdens on small businesses and disincentivizing plaintiffs' attorneys from obtaining "monetary
17 settlements at the expense of forward-looking relief that might benefit the general public." *Id.*
18 Plaintiff fails to articulate in either his operative complaint or his lodged complaint in connection
19 with this pending motion to amend and basis for why such circumstances should not be deemed
20 exceptional, and there is "little doubt that the first prong [under § 1367(c)(4)] is satisfied here." *Vo*,
21 49 F.4th at 1171.

22 Turning to the second part of the inquiry—whether there are other compelling reasons for
23 declining jurisdiction—the Court considers the *Gibbs* values of economy, convenience, fairness,
24 and comity. *Vo*, 49 F.4th at 1171. Importantly, this case is an early stage of the litigation—no
25 Defendant has appeared, discovery has not commenced and Plaintiff's ADA/Unruh Act claims
26 have not been fully resolved. *See Arroyo*, 19 F.4th at 1214 (noting that the *Gibb*'s values did not
27 support declining supplemental jurisdiction where the case was at a "very late stage"); *Block v.*
28 *Arsh & Jot LLC*, No. 1:24-cv-0812 JLT SAB, 2024 WL 5195915, at *5 (E.D. Cal. Dec. 23, 2024)

13

1  (same). Thus, this is not a case "where it makes no sense to decline jurisdiction . . . over a pendent state law claim that that court has effectively already decided." *Id.*

Moreover, in light of the above discussion of California's requirements for Unruh Act claims, it would not be fair, nor would comity be served, by allowing Plaintiff's Unruh Act claim to proceed without the state court being able to enforce its policy interests as reflected in its various procedural requirements. *Id.* at 1213 (noting "comity-based concerns that California's policy objectives in this area were being wholly thwarted" by plaintiffs being able to bring Unruh Act claims in Federal court). Although it is unclear at this stage whether Plaintiff constitutes a "high-frequency litigant," the Court notes it need not determine whether he is in fact a high-frequency litigant. *Vo*, 49 F.4th at 1174 (noting that court was not required to determine whether the plaintiff was in fact a high-frequency litigant). Likewise, notwithstanding that this action is in the Eastern District, the Court notes it need only determine whether California's requirements are implicated, not whether they are in fact met. As the Ninth Circuit noted in *Vo*, whether a Plaintiff "has satisfied the heightened pleading requirements" imposed in California is a question for the state court because "[f]orcing the district court to determine if [this is] in fact true would itself run afoul of the *Gibbs* values—especially comity," and would deprive California of playing its "critical role in effectuating the policies underlying [its] reforms." *Vo*, 49 F.4th at 1173-74 (internal citation omitted).

Accordingly, in light of the two-step inquiry under § 1367(c)(4), the Court concludes that the circumstances of this case are exceptional and there are other compelling reasons to decline supplemental jurisdiction over Plaintiff's Unruh Act and related state law claims. *See, e.g.*, *Orosco v. Monrroy Enters. LLC*, No. 2:23-cv-07818-MEMF (KSx), 2023 WL 10407115, at *5 (C.D. Cal. Nov. 30, 2023) (declining to exercise supplemental jurisdiction over and dismissing Plaintiff's California Unruh Act, Disabled Persons Act, Health & Safety Code and negligence claims following *Vo/Arroyo* analysis); *Kim v. Vegara*, No. EDCV 22-281 JGB (SHKx), 2022 WL 17080182, at *5 (C.D. Cal. Oct. 5, 2022) (same); *Benford v. Hall*, No. CV 22-03337-RSWL-ASx, 2022 WL 20273588, at *3 & n.3 (C.D. Cal. July 18, 2022) (same).

Because Plaintiff may be able to remedy his pleadings to demonstrate that exceptional circumstances do not warrant declining supplemental jurisdiction over Plaintiff's Unruh Act and related state law claims or that other compelling reasons favor exercising supplemental jurisdiction, Plaintiff will be afforded an opportunity to amend his pleading. However, if Plaintiff chooses to replead his ADA and Unruh Act claims but fails to articulate adequate grounds warranting the Court's exercise of supplemental jurisdiction, the undersigned will recommend against exercising jurisdiction over Plaintiff's Unruh Act, CDPA, and related state law cause of action.

### C. Leave to Amend

#### 1. Governing Authority

Rule 15 permits a plaintiff to amend the complaint once as a matter of course no later than 21 days after service of the complaint or 21 days after service of a responsive pleading or motion to dismiss, whichever is earlier. *See* Fed. R. Civ. P. 15(a)(1). After such time has passed or plaintiff has once amended their complaint, amendment may only be by leave of the court or by written consent of the adverse parties. Fed. R. Civ. P. 15(a)(2). "Rule 15(a) is very liberal" and a court should freely give leave to amend when "justice so requires." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006); *see Chodos v. W. Publ. Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("it is generally our policy to permit amendment with 'extreme liberality'") (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990)).

Granting or denying leave to amend a complaint under Rule 15 is within the discretion of the court. *Swanson v. United States Forest Service*, 87 F.3d 339, 343 (9th Cir. 1996). "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir, 1981); *Chudacoff v. Univ. Med. Ctr.*, 649 F.3d 1143, 1152 (9th Cir. 2011) ("refusing Chudacoff leave to amend a technical pleading error, albeit one he should have noticed earlier, would run contrary to Rule 15(a)'s intent.").

#### 2. Analysis

In the motion for leave amend, Plaintiff requests leave to file the lodged amended complaint to add Alghaity Abdullah Corp. ("Abdullah Corp.") as a defendant. (Doc. 37 at 1). Plaintiff asserts

that "[t]he only difference" between the operative complaint and the lodged amended complaint is that Plaintiff correctly names Defendant Saleh in the original complaint and upon further investigation, the "lessee" of CaliMex Supermarket is Abdullah Corp. (*Id.* at 2).

The undersigned has reviewed Plaintiff's motion for leave to amend (Doc. 37) and the lodged first amended complaint (Doc. 38) and finds grant of the motion appropriate to allow Plaintiff to name the identified lessee, Abdullah Corp., as a proper Defendant in this action. Plaintiff will be directed to file a first amended complaint as set forth below.

### IV.    Conclusion and Order

For the reasons set forth above, the Court finds Plaintiff has failed to cognizably plead and establish standing to plead an ADA claim and has failed to plead why the Court should exercise supplemental jurisdiction over Plaintiff's Unruh Act and related state law claims. Because he may be able to identify the lessee, Plaintiff will be granted leave to amend his complaint to do so. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

If Plaintiff wishes to file a first amended complaint, any such amended complaint should be brief (Fed. R. Civ. P. 8(a)) but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights (*Iqbal*, 556 U.S. at 678-79). Although accepted as true, the "[f]actual allegation must be [sufficient] to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted). Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (explaining no "buckshot" complaints permitted).

Finally, an amended complaint supersedes the original complaint. *Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012). If Plaintiff elects to proceed with this action by filing an amended complaint, the Court cannot refer to a prior pleading in order to make an amended complaint complete. *See* E. D. Cal. Local Rule 220. The **amended complaint must be complete in itself without reference to the prior or superseded pleading**. Once the amended complaint is filed, the original pleading no longer serves any function in the case. Thus, in the amended complaint, **Plaintiff must re-plead all elements of his claims, including all relevant facts, even the ones not addressed by this screening order.**

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's motion for leave to amend (Doc. 37) is GRANTED (*see* Fed. R. Civ. P. 15(a)(2)); and
2. Plaintiff SHALL FILE any amended complaint within 21 days of entry of this order.

**If Plaintiff fails to timely comply with this order, the Court will recommend that this action be dismissed for failure to state a claim, failure to obey a court order and/or failure to prosecute.**

IT IS SO ORDERED.

Dated:   **June 12, 2025**                                   _____
                                                             UNITED STATES MAGISTRATE JUDGE

17