1

2

3

4

5              UNITED STATES DISTRICT COURT

6             EASTERN DISTRICT OF CALIFORNIA

7

8  STEVEN WHITFIELD,                    Case No. 1:22-cv-00141-KES-CDB

9              Plaintiff,               FINDINGS AND RECOMMENDATIONS
                                        TO DISMISS ACTION WITH PREJUDICE
10      v.                              FOR PLAINTIFF'S FAILURE (1) TO STATE
                                        A CLAIM AND (2) TO PROSECUTE AND
11 KHALIB SALEH, *et al.*,              TO OBEY COURT ORDERS AND LOCAL
                                        RULES
12             Defendants.
                                        (Doc. 43)
13
                                        **14-DAY OBJECTION PERIOD**
14

15       Plaintiff Steven Whitfield ("Plaintiff"), proceeding pro se and *in forma pauperis*, initiated

16 this action with the filing of a complaint on February 2, 2022.  (Docs. 1, 4).  On February 24,

17 2023, the Court directed the United States Marshal to serve service documents upon individual

18 Defendants Kimberly Long and Darrell Long ("individual Defendants") and Defendant Khalib

19 Saleh, owner of CaliMex Supermarket ("Defendant" or "Saleh").  (Doc. 16).  Summons returned

20 executed were filed on May 3, 2023, with all responses to the complaint due on May 16, 2023.

21 (Doc. 18).  Individual Defendants filed their unopposed motion to dismiss on June 6, 2023.[1] (Doc.

22 23).  Thereafter, Plaintiff filed a motion for leave to amend (Doc. 37) and therewith lodged a

23 proposed first amended complaint (Doc. 38) on May 6, 2025.  Individual Defendants opposed the

24 motion to amend on May 19, 2025.  (Doc. 40).

25       On June 12, 2025, the Court granted Plaintiff's motion for leave to amend and entered the

26 first screening order, finding that Plaintiff has failed to cognizably plead and establish standing to

27

28       [1] The undersigned has issued findings and recommendations, now pending disposition
before the assigned district judge, to grant individual Defendants' motion to dismiss Plaintiff's
claims against them without leave to amend.  (Doc. 42).

1    plead an ADA claim and has failed to plead why the Court should exercise supplemental

2    jurisdiction over Plaintiff's Unruh Act and related state law claims.  (Doc. 43).  Because the Court

3    found that Plaintiff may be able to cure the identified deficiencies of his complaint, Plaintiff was

4    granted leave to amend his complaint.  *Id.* at 16.  Plaintiff was provided 21 days from entry of the

5    order to file any amended complaint and was forewarned that "**[i]f Plaintiff fails to timely**

6    **comply with this order, the Court will recommend that this action be dismissed for failure**

7    **to state a claim, failure to obey a court order and/or failure to prosecute**."  *Id.* at 17.

8         Plaintiff failed to file any amended complaint, and the time to do so has now passed.  The

9    Court construes Plaintiff's failure to file an amended complaint as an expression of his desire to

10   proceed on the complaint as filed and screened.  For the reasons set forth below, the undersigned

11   will recommend this action be dismissed for Plaintiff's failure to state a claim and his failure to

12   obey a court order and to prosecute the action.

13   **I.    Screening Requirement**

14        As Plaintiff was advised in the Court's screening order (Doc. 43), federal courts must

15   screen *in forma pauperis* complaints and dismiss any case that is "frivolous or malicious," "fails

16   to state a claim on which relief may be granted" or seeks monetary relief against an immune

17   defendant.  *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (*en banc*) ("[S]ection

18   1915(e) not only permits but requires a district court to dismiss an [IFP] complaint that fails to

19   state a claim."); *see also id.* at 1129 ("section 1915(e) applies to all *in forma pauperis* complaints,

20   not just those filed by prisoners.").

21        A complaint must contain "a short and plain statement of the claim showing that the

22   pleader is entitled to relief…"  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

23   required but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

24   conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

25   *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint may be dismissed as a matter

26   of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2)

27   insufficient facts under a cognizable legal theory.  *See Balisteri v. Pacifica Police Dep't*, 901 F.2d

28   696, 699 (9th Cir. 1990).

1    Pleadings by self-represented litigants are to be liberally construed.  *See Haines v. Kerner*,

2    404 U.S. 519, 520-21 (1972).  However, "the liberal pleading standard . . . applies only to a

3    plaintiff's factual allegations," not his legal theories.  *Neitzke v. Williams*, 490 U.S. 319, 330 n .9

4    (1989).  Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential

5    elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin*., 122 F.3d

6    1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not

7    required to indulge unwarranted inferences."  *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681

8    (9th Cir. 2009) (internal quotation marks & citation omitted).

9    **II.    Plaintiff's Allegations**[2]

10    In the operative complaint,[3] Plaintiff asserts seven claims for relief, including: disability

11    discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq*.

12    (Count 1); violation of California's Unruh Civil Rights Act ("Unruh Act") (Count 2); violation of

13    California's Disabled Persons Act ("CDPA") (Count 3); respondeat superior (Count 4); premises

14    liability (Count 5); res ispa loquitur (Count 6); and intentional/negligent infliction of emotional

15    distress (Count 7).  (Doc. 1 at 11-13).  Plaintiff also asserts supplemental state law personal injury

16    claims under California Civil Code Section 714 against Defendants.  *Id.* at 13-15.

17    Plaintiff alleges that, as an individual "with significant related mobility[,]" he was denied

18    "the full and equal enjoyment of the goods" and "services" of CaliMex Supermarket on the basis

19    of his disability due to "architectural barriers" and Defendants' policies and practices "that result

20    in a[n inaccessible] supermarket … in violation of the [ADA] and [the CDPA]."  *Id.* at 6.  He

21    alleges that Defendants "have ha[d] substantial notice that the issues alleged in [his c]omplaint

22    violates the ADA and various state disability laws" and "as of the date of filing [the c]omplaint

23    Defendants have not taken any corrective actions towards remedying the problem as … alleged."

24    *Id*.  The complaint asserts that subject matter jurisdiction attaches under Title III of the ADA and

25    that the Court "has supplemental [jurisdiction] over the state law claims pursuant to 28 U.S.C.

26

27    [2] References to the complaint herein are to the CM/ECF-assigned page number.

28    [3] The undersigned accepts Plaintiff's allegations in the complaint as true only for the
purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

3

1   Section 1367, because these claim[s] are so related to the ADA claims[.]" *Id.* at 7. The

2   complaint alleges that the Court has personal jurisdiction over Defendants "because [CaliMex]

3   Supermarket, lessee [and] lessor are both citizens of the County of Kern[.]" *Id.*

4         The complaint alleges that CaliMex Supermarket violates the ADA based on its

5   inaccessible restrooms and lack of designated handicap parking spaces at the facility. *Id.* at 8, 11.

6   Specifically, Plaintiff alleges the restrooms are inaccessible "because they are too small, contain

7   inaccessible fixtures, or are closed altogether" as the restrooms lack handicap signage and

8   railings. *Id.* at 8. "These features, individually and together, deny individuals with mobility

9   disabilities the opportunity to safely and independently use the restroom facilities[.]" *Id.* As to

10   the parking spaces, Plaintiff alleges there are an "insufficient number of handicap parking spaces"

11   and "individuals such as Plaintiff who are dependent on handicap parking spaces face significant

12   difficulty when attempting to visit Defendant's store." *Id.* Plaintiff also alleges the store's sinks

13   "are too high" and the "sink pipes are not insulated" such that "individuals as Plaintiff could be

14   burned by scalding pipes[.]" *Id.* He alleges that "the failure to remove architectural barriers,

15   failure to provide any []handicap parking spaces whatsoever, signage and communication

16   barriers … in existing facilities, and transportational barriers in existing vehicles" constitutes

17   Defendants' lessee and lessor's discrimination against him. *Id.*

18         Counts 1, 2, and 3 are asserted against Defendant "lessee and lessor" of CaliMex

19   Supermarket for discrimination on the basis of disability under the ADA (Count 1), violation of

20   the Unruh Act (Count 2), and for violation of the CDPA (Count 3). *Id.* at 11. The complaint

21   identifies Defendant Khalib Saleh as the owner of CaliMex Supermarket and also an unknown

22   Defendant as "lessee to [Defendant] Khalib Saleh—[l]essor and owner and operator [of

23   CaliMex]." *Id.* at 2.

24         In Count 4, Plaintiff asserts that Defendant Kimberly Long is liable under the doctrine of

25   res ispa loquitor as Long "was in exclusive control of her vehicle that caused Plaintiff's injuries

26   and damages" which "would not have ordinarily occurred but for [her] negligence and" were "not

27   due to [Plaintiff's] actions or contribution." *Id.* at 12.

28         In Count 5, Plaintiff asserts a premises liability claim against Defendant lessee and lessor

of CaliMex Supermarket and alleges that the "premises was a dangerous and/or a hazardous condition at the time of the injuries and damages and were the cause[] or contributed to Plaintiff's injuries and damages" and "Plaintiff has sustained grievous injury to his body and mind … as a direct result[.]" *Id.*

In Count 6, Plaintiff asserts Defendants lessee and lessor of CaliMex Supermarket and Long are liable under the doctrine of res ispa loquitor and reasserts allegations in Count 4 that Long "was in exclusive control of the vehicle … that caused Plaintiff's injuries and damages." *Id.*

In Count 7, Plaintiff asserts an intentional/negligent infliction of emotional distress claim against Defendants lessee and lessor and alleges both Defendants "were negligent" and their conduct "was reckless and outrageous." *Id.*

In the claim labeled "supplemental state law personal injury claims general negligence of Defendants," Plaintiff asserts a personal injury/property damage claim against Defendants Kimberly Long as the driver of the vehicle, Darrell Long as the owner of the vehicle, and CaliMex Supermarket and its servants, agents, and employees. *Id.* at 13.  He alleges that Darrell Long "had a common law duty to only 'entrust' his motor vehicle to be driven by another who possessed the skill, experience and carefulness to make a car collision likely[.]" *Id.*  He further alleges that Defendant Khalib Saleh "had a legal duty to make his property safe patronage and eliminate any known dangerous conditions existing on the property" as the particular location of the business is "overcrowded" and "a safety hazard and/or a dangerous condition to members of the general public and prospective patrons" of the business.  *Id.* at 13, 14.  He alleges that on February 5, 2021, he "suffered an automobile accident" with Defendant Kimberly Long at the place of business and that prior to the accident, Plaintiff took a friend to the business "at least [four] times[.]"  *Id.* at 14.  He alleges that on the date of the accident, Defendant CaliMex Supermarket "allowed his employee(s) to illegally park on the blacktop" near the business "to avoid any … damages to their vehicles while at work[.]" *Id.* at 15.

Plaintiff seeks damages under the Unruh Civil Rights Act, the Persons with Disabilities Act, declaratory and injunctive relief, $7,500 in property damages, $7,000 in personal injury

damages, $7,000 for negligent infliction of emotional distress and negligent entrustment, and for attorney's fees and costs. *Id.* at 15-16. The complaint is signed and dated January 28, 2022. *Id.* at 16.

**III.    Discussion**

      **A.    Failure to File a First Amended Complaint**

Plaintiff failed to file a first amended complaint following the Court's issuance of its first screening order and order granting Plaintiff's motion for leave to amend. (*See* Doc. 43 at 17). The undersigned construes Plaintiff's failure to file a first amended complaint as an expression of his desire to proceed on the complaint as filed. Thus, the undersigned recommends that the complaint be dismissed for failure to state a cognizable claim and for failure to obey a court order and to prosecute as set forth below.

      **B.    Failure to State a Claim**

            1.    American with Disabilities Act ("ADA")

                  a.    *ADA Governing Law*

The ADA was enacted in response to a "compelling need" for a "clear and comprehensive national mandate" to eliminate discrimination against disabled individuals. *PGA Tour, Inc. v. Martin*, 532 U.S. 557, 577 (2009). "To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)." *Id.* Title III of the ADA prohibits discrimination against persons with disabilities and provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The ADA requires business facilities be "readily accessible to and usable by individuals with disabilities," unless it would be "structurally impracticable." 42 U.S.C. § 12183(a)(1); *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011). "In general, a facility is readily accessible to and usable by individuals with disabilities if it meets the requirements promulgated by the Attorney General in the 'ADA

Accessibility Guidelines,' or the 'ADAAG.'"  *Oliver*, 654 F.3d at 905.  These standards are codified at 28 C.F.R. Pt. 36, Appendix A, and are "essentially an encyclopedia of design standards."  *See id*.

For purposes of Title III, discrimination also includes "a failure to remove architectural barriers … in existing facilities … where such removal is readily achievable."  42 U.S.C. § 12182(b)(2)(A)(iv).

The Ninth Circuit has articulated the elements of an ADA discrimination claim as follows:

> To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability.

*Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).  A plaintiff need not show intentional discrimination to establish an ADA violation.  *Lentini v. California Ctr. for the Arts, Escondido*, 370 F.3d 837, 846 (9th Cir. 2004).

b.    *ADA Standing*

A court's jurisdiction "is to be assessed under the facts existing when the complaint is filed."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.4 (1992).  Consequently, "[t]he requisite personal interest"—standing—"must exist at the commencement of the litigation."  *Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc*., 528 U.S. 167, 214 (2000) (citation omitted); *see Langer v. Kiser*, 57 F.4th 1085, 1098 (9th Cir. 2023) ("standing ordinarily depends on the facts that exist at the time the complaint is filed") (internal quotation and citation omitted); *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 850 (9th Cir. 2007) (the court "must consider the facts as they existed at that time the complaint was filed").

To show standing, a plaintiff "must demonstrate that he has suffered an injury-in-fact, that the injury is traceable to the [defendant's] action, and that the injury can be redressed by a favorable decision."  *Chapman v. Pier 1 Imports (U.S.) Inc*., 631 F.3d 939, 946 (9th Cir. 2011) (en banc).  An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent' not 'conjectural' or 'hypothetical.'"  *Lujan*, 504

7

1    U.S. at 560 (internal citations omitted).  An injury is "concrete and particularized" when a

2    plaintiff suffers discrimination due to architectural barriers at a public accommodation and those

3    barriers have deterred plaintiff from returning.  *Doran v. 7-Eleven*, 524 F.3d 1034, 1041 (9th Cir.

4    2008).

5         A plaintiff suffers an "actual and imminent" injury under the ADA when he alleges "(1)

6    that he visited an accommodation in the past; (2) that he was currently deterred from returning to

7    the accommodation because of ADA violations; and (3) that he would return if the ADA

8    violations were remedied."  *Doran*, 524 F.3d at 1041 (citing *Molski v. Arbys Huntington Beach*,

9    359 F. Supp. 2d 938, 947 (C.D. Cal. 2005)).  For standing purposes, an ADA plaintiff must allege

10   sufficient facts to demonstrate that an accessibility barrier "interfere[s] with [his] 'full and equal

11   enjoyment' of the facility" in question.  *Chapman*, 631 F.3d at 947 (quoting 42 U.S.C. §

12   12182(a)).  A barrier amounts "to such interference if it affects the plaintiff's full and equal

13   enjoyment of the facility on account of his particular disability." *Id.*

14        The ADAAG "establish[ ] the technical standards required for 'full and equal

15   enjoyment.'"  *Id.*  If a barrier violating the ADAAG standards "relates to a plaintiff's disability, it

16   will impair the plaintiff's full and equal access, which constitutes 'discrimination' under the

17   ADA. That discrimination satisfies the 'injury-in-fact' element."  *Id.*

18                       c.    *Analysis*

19        Plaintiff asserts claims for violations under Title III of the ADA, namely for

20   discrimination on the basis of a disability in Count 1, violation of the Unruh Act predicated upon

21   the ADA violation in Count 2, and violation of the CDPA predicated upon the ADA violation in

22   Count 3 against Defendants "lessee[, who is not identified,] and lessor[, *i.e.*, Saleh.]"  (Doc. 1 at

23   11); (*see id.* at 2).

24        Plaintiff sufficiently alleges that he is disabled under the ADA as "a person with

25   disabilities" with "physical impairments that substantially limits one or more of his major life

26   activities" and "is forced to use a [four-wheeled walker] for mobility[.]"  (*Id.* at 7); (*see id.* at 8

27   ["Plaintiff is disabled as that term is defined by Title III of the ADA."] and 9 ["Plaintiff's

28   physical and medical impairments substantially affect[] a major life activity, such as walking

                                              8

1    (unless aided by a four-wheeled walker), and with significant lack of dexterity in both legs or

2    performing manual tasks and therefore qualifying as a disability."]).  *See Daubert v. Lindsay*

3    *Unified Sch. Dist.*, 760 F.3d 982, 984 (9th Cir. 2014) (plaintiff who uses wheelchair for mobility

4    is disabled under ADA).  Plaintiff also sufficiently alleges that Defendant Saleh and the unnamed

5    lessee are private entities that own, lease, or operate CaliMex Supermarket.  (*Id.* at 8)

6    ("Defendant-lessee of [CaliMex] Supermarket and its building owner-lessor [Defendant Saleh]

7    discriminated against Plaintiff[.]"); (*see id.* at 9) ("[CaliMex] Supermarket is a private entity that

8    is owned, leased, or operated as a place of public accommodation.").  Thus, the first two factors

9    to state a Title III ADA claim are sufficiently alleged.  *Molski*, 481 F.3d at 730.

10        However, Plaintiff has failed to adequately allege that he was denied public

11   accommodations by Defendant Saleh and the unnamed lessee because of his disability and fails to

12   demonstrate standing as to the ADA claims.

13        Regarding Defendant's parking spaces that Plaintiff claims violate the ADA, Plaintiff

14   alleges that he visited Defendant's store location "at least 4 times before the February 5, 2021 car

15   accident," and that during those visits, his passenger (Ms. Thompson) entered the store and

16   completed her shopping within a short time.  (Doc. 1 at 14).  The fact that Plaintiff has completed

17   at least five successful shopping visits to Defendant's premises undermines his contrary

18   allegations that the nature and number of handicap parking spaces at that location present a

19   "significant difficulty" (*id.* at 8) in Plaintiff's ability to park at or to access Defendant's store.  *See*

20   *Sacco v. Mouseflow, Inc.*, No. 2:20-cv-02330-TLN-KJN, 2022 WL 4663361, at *2 (E.D. Cal.

21   Sept. 30, 2022) ("Though a Court must generally accept allegations in a complaint as true at the

22   motion to dismiss stage, the Court need not accept inconsistent allegations in a complaint as

23   true.") (citing cases). Further, Plaintiff's allegations are phrased as "individuals such as Plaintiff"

24   are challenged by Defendant's parking spaces - not that Plaintiff himself, in fact, actually

25   encountered difficulty when attempting to visit Defendant's store on any particular occasion.  *See*

26   *Lujan*, 504 U.S. at 560 (noting that plaintiff must suffer an injury that is "concrete and

27   particularized," not conjectural or hypothetical).  Thus, because Plaintiff's allegations undermine

28   that he was or is deterred from returning to Defendant's store because of ADA violations and that

1   he would return if the ADA violations were remedied, and because Plaintiff's allegations are

2   general and conclusory, Plaintiff fails to adequately plead standing to bring an ADA claim based

3   on Defendant's parking spaces. *Doran*, 524 F.3d at 1041.

4       Regarding Defendant's allegedly inaccessible restrooms, there are no allegations in the

5   complaint from which the Court reasonably can infer that Plaintiff *himself* attempted to but was

6   unable to adequately access the restrooms.  As noted above, Plaintiff's allegations appear to

7   indicate that only his passenger (Ms. Thompson) exited his vehicle and conducted shopping

8   during Plaintiff's visits to Defendant's store.  Also, like his allegations regarding Defendant's

9   parking spaces, Plaintiff pleads only in general terms that the nature of Defendant's restrooms

10  "deny individuals with mobility disabilities the opportunity" to use the restrooms - not that he

11  attempted to access and was denied use of a restroom on any specific occasion, or that he is

12  deterred from entering and shopping at Defendant's store because of inaccessible restrooms.

13  Similarly, Plaintiff pleads only that "individuals as Plaintiff could be burned by scalding pipes"

14  due to their lack of insulation, not that Plaintiff actually ever was in close proximity to

15  uninsulated pipes in Defendant's restrooms or that he was deterred from using Defendant's store

16  restrooms because of uninsulated pipes.

17      Thus, Plaintiff has failed to cognizably plead, and establish standing to plead, an ADA

18  claim in Count 1 against Defendant Saleh and the unnamed lessee.

19              2.      Unruh Act

20                  a.      *Governing Law*

21      Count 2 asserts a claim under the Unruh Act predicated on the ADA violation asserted in

22  Count 1 of Plaintiff's complaint.  "The Unruh Act has been described as 'coextensive with the

23  ADA,' and in the disability context, 'operates virtually identically to the ADA.'"  *Arafiles v.*

24  *Safeway, Inc.*, No. 2:24-cv-02801-TLN-SCR, 2025 WL 457834, at *2 (E.D. Cal. Jan. 27, 2025)

25  (citing *Molski*, 481 F.3d at 731).  "As the Unruh Act allows for monetary damages, 'litigants in

26  federal court in California often pair state Unruh Act claims with federal ADA claims.'"  *Id.*; *see*

27  *Williams v. Amazone.com Inc.*, No. 2:20-cv-513-JDP PS, 2020 WL 5909060, at *1 (E.D. Cal.

28

1    Oct. 6, 2020) ("[A]ny violation of the ADA necessarily constitutes a violation of the Unruh
2    Act.").

3         Under 28 U.S.C. § 1367(a), a court that has original jurisdiction over a civil action "shall
4    have supplemental jurisdiction over all other claims that are so related to claims in the action
5    within such original jurisdiction that they form part of the same case or controversy under Article
6    III of the United States Constitution."  The Ninth Circuit has concluded that ADA and Unruh Act
7    claims that derive from a common nucleus of operative fact "form part of the 'same case or
8    controversy' for purposes of § 1367(a)."  *Arroyo v. Rosas*, 19 F.4th 1202, 1209 (9th Cir. 2021).

9         However, even where supplemental jurisdiction over a claim exists under § 1367(a), the
10   Court may decline jurisdiction over the claim if:

11            (1) the claim raises a novel or complex issue of State law,

12            (2) the claim substantially predominates over the claim or claims over which the
13            district court has original jurisdiction,

14            (3) the district court has dismissed all claims over which it has original jurisdiction, or

15            (4) in exceptional circumstances, there are other compelling reasons for declining
16            jurisdiction.

17   § 1367(c)(1)-(4).

18        Pertinent here, a court deciding whether to apply § 1367(c)(4) must undertake "a two-part
19   inquiry."  *Arroyo*, 19 F.4th at 1210.  "First, the district court must articulate why the
20   circumstances of the case are exceptional within the meaning of § 1367(c)(4)."  *Id.* (citations and
21   internal quotation marks omitted).  "Second, in determining whether there are compelling reasons
22   for declining jurisdiction in a given case, the court should consider what best serves the principles
23   of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine
24   articulated in [*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966)]."  *Id.* (citations and
25   internal quotation omitted).

26        After considering § 1367(c)(4) and California's requirements for bringing Unruh Act
27   claims, "numerous district courts in California 'have declined to exercise supplemental
28   jurisdiction over Unruh Act . . . claims brought alongside ADA claims.'"  *Block v. Cal.-Fresno*

11

1   *Invest. Co.*, No. 1:22-cv-1419 JLT SAB, 2023 WL 8675398, at *4 (E.D. Cal. Dec. 15, 2023)

2   (quoting *Rutherford v. Nuway Ins. Agency Inc.*, No. SACV 21-00576-CJC-JDE, 2021 WL

3   4572008, at *1 (C.D. Cal. Apr. 1, 2021)).  Underlying these decisions is "the recent confluence of

4   several California-law rules [that] have combined to create a highly unusual systemic impact on

5   ADA-based Unruh Act cases that clearly threatens to have a significant adverse impact on

6   federal-state comity." *Arroyo*, 19 F.4th at 1211.

7           Notably, Congress adopted the ADA to address the discrimination encountered by persons

8   with disabilities, providing a private cause of action to seek injunctive, but not monetary, relief.

9   *See id.* at 1205 (discussing background and relief available under the ADA).  And the Unruh Act

10  likewise prohibits disability discrimination, containing a provision, Cal. Civ. Code § 51(f), stating

11  that a violation of the ADA also violates the Unruh Act. However, unlike the ADA, the Unruh

12  Act allows a plaintiff to recover "up to a maximum of three times the amount of actual damage

13  but in no case less than four thousand dollars." Cal. Civ. Code § 52(a).

14          In response to perceived abuses of the Unruh Act, California has enacted requirements for

15  bringing such claims, which requirements the Ninth Circuit has assumed, without deciding,

16  "apply only in California state court."  *Vo v. Choi*, 49 F.4th 1167, 1170 (9th Cir. 2022).  For

17  example, provisions were added (1) regarding the contents of demand letters, Cal. Civ. Code §

18  55.31; (2) imposing heightened pleading requirements, Cal. Civ. Code § 425.50(a); and (3)

19  requiring an additional filing fee of $1,000 for so called "high-frequency litigants," Cal. Gov't

20  Code § 70616.5(b), *see* Cal. Civ. Code § 425.55(b) (defining a high-frequency litigant to include

21  "[a] plaintiff who has filed 10 or more complaints alleging a construction-related accessibility

22  violation within the 12-month period immediately preceding the filing of the current complaint

23  alleging a construction-related accessibility violation").

24          All of these requirements[4] apply to claims alleging a construction-related accessibility

25  violation, defined as involving "a provision, standard, or regulation under state or federal law

26  requiring compliance with standards for making new construction and existing facilities

27  accessible to persons with disabilities," including those related to the ADA.  Cal. Civ. Code

28  _____

    [4] Cal. Civ. Code § 55.31(a); Cal. Civ. Code § 425.50(a); Cal. Gov't Code § 70616.5(a).

§ 55.52(a)(1), (6); *see* Cal. Civ. Code § 55.3(a)(2).  By enacting such restrictions, California has expressed a "desire to limit the financial burdens California's businesses may face from claims for statutory damages under the Unruh Act." *Arroyo*, 19 F.4th at 1209 (internal quotations omitted).  However, "Unruh Act plaintiffs have evaded these limits by filing in a federal forum in which [they] can claim these state law damages in a manner inconsistent with the state law's requirements." *Id.* at 1213 (internal quotation omitted). Consequently, "the procedural strictures that California put in place have been rendered largely toothless, because they can now be readily evaded." *Id.*

The Ninth Circuit has provided substantial guidance on this issue in *Vo v. Choi* in affirming a district court's order denying supplemental jurisdiction over an Unruh Act claim under § 1367(c)(4).  *Vo*, 49 F.4th at 1168.  In that case, the district court declined supplemental jurisdiction over the Unruh Act claim after giving the plaintiff the opportunity to respond and before addressing the merits of the case.  *Id.* at 1168-69.  In reviewing the district court's decision, the Ninth Circuit held that the district court sufficiently explained why the circumstances of the case were exceptional under § 1367(c)(4), agreeing with the district court that "it would not be 'fair' to defendants and 'an affront to the comity between federal and state courts' to allow plaintiffs to evade California's procedural requirements by bringing their claims in federal court." *Id.* at 1171.  The Court also affirmed the district court's finding that the balance of the *Gibbs* values—economy, convenience, fairness, and comity—provided compelling reasons to decline supplemental jurisdiction, stating that "the district court [properly] analyzed Vo's situation under the *Gibbs* values and determined that the values of fairness and comity favored not retaining jurisdiction over the claim." *Id.* at 1172.  Accordingly, "[g]iven these very real concerns, in addition to the deferential standard of review, [the Ninth Circuit saw] no reason to hold that the district court abused its discretion in determining there were compelling reasons to decline jurisdiction over the Unruh Act claim." *Id.*

With these legal standards in mind, the undersigned addresses whether the relevant considerations of § 1367(c)(4) warrant declining the exercise of supplemental jurisdiction over Plaintiff's Unruh Act claim, assuming Plaintiff could cognizably allege an ADA claim.

1          b.    *Analysis*

2          The undersigned begins with the first part of the two-step inquiry under § 1367(c)(4)—

3    whether the circumstances here are exceptional.  *Vo*, 49 F.4th at 1171.

4          As discussed above, California has enacted various requirements that apply to claims

5    alleging a construction-related accessibility violation. And if the Court were to exercise

6    jurisdiction over Plaintiff's Unruh Act claim, Plaintiff would be permitted to avoid these

7    requirements.  *See Arroyo*, 19 F.4th at 1213 (noting that potential evasion of California's

8    requirements met exceptional-circumstances prong of § 1367(c)(4)). Further, such evasion would

9    undermine California's policy interests in enforcing its requirements—providing monetary relief

10   but limiting burdens on small businesses and disincentivizing plaintiffs' attorneys from obtaining

11   "monetary settlements at the expense of forward-looking relief that might benefit the general

12   public." *Id.*  Plaintiff fails to articulate in either his operative complaint or his lodged complaint

13   in connection with this pending motion to amend and basis for why such circumstances should

14   not be deemed exceptional, and there is "little doubt that the first prong [under § 1367(c)(4)] is

15   satisfied here." *Vo*, 49 F.4th at 1171.

16         Turning to the second part of the inquiry—whether there are other compelling reasons for

17   declining jurisdiction—the Court considers the *Gibbs* values of economy, convenience, fairness,

18   and comity.  *Vo*, 49 F.4th at 1171. Importantly, this case is an early stage of the litigation—no

19   Defendant has appeared, discovery has not commenced, and Plaintiff's ADA/Unruh Act claims

20   have not been fully resolved.  *See Arroyo*, 19 F.4th at 1214 (noting that the *Gibb*'s values did not

21   support declining supplemental jurisdiction where the case was at a "very late stage"); *Block v.*

22   *Arsh & Jot LLC*, No. 1:24-cv-0812 JLT SAB, 2024 WL 5195915, at *5 (E.D. Cal. Dec. 23, 2024)

23   (same).  Thus, this is not a case "where it makes no sense to decline jurisdiction . . . over a

24   pendent state law claim that that court has effectively already decided." *Id.*

25         Moreover, in light of the above discussion of California's requirements for Unruh Act

26   claims, it would not be fair, nor would comity be served, by allowing Plaintiff's Unruh Act claim

27   to proceed without the state court being able to enforce its policy interests as reflected in its

28   various procedural requirements.  *Id.* at 1213 (noting "comity-based concerns that California's

policy objectives in this area were being wholly thwarted" by plaintiffs being able to bring Unruh Act claims in Federal court).  Although it is unclear at this stage whether Plaintiff constitutes a "high-frequency litigant," the Court notes it need not determine whether he is in fact a high-frequency litigant.  *Vo*, 49 F.4th at 1174 (noting that court was not required to determine whether the plaintiff was in fact a high-frequency litigant).  Likewise, notwithstanding that this action is in the Eastern District, the undersigned notes it need only determine whether California's requirements are implicated, not whether they are in fact met.  As the Ninth Circuit noted in *Vo*, whether a Plaintiff "has satisfied the heightened pleading requirements" imposed in California is a question for the state court because "[f]orcing the district court to determine if [this is] in fact true would itself run afoul of the *Gibbs* values—especially comity," and would deprive California of playing its "critical role in effectuating the policies underlying [its] reforms."  *Vo*, 49 F.4th at 1173-74 (internal citation omitted).

Accordingly, in light of the two-step inquiry under § 1367(c)(4), the undersigned concludes that the circumstances of this case are exceptional and there are other compelling reasons to decline supplemental jurisdiction over Plaintiff's Unruh Act and related state law claims.  *See, e.g.*, *Orosco v. Monrroy Enters. LLC*, No. 2:23-cv-07818-MEMF (KSx), 2023 WL 10407115, at *5 (C.D. Cal. Nov. 30, 2023) (declining to exercise supplemental jurisdiction over and dismissing Plaintiff's California Unruh Act, Disabled Persons Act, Health & Safety Code and negligence claims following *Vo/Arroyo* analysis); *Kim v. Vegara*, No. EDCV 22-281 JGB (SHKx), 2022 WL 17080182, at *5 (C.D. Cal. Oct. 5, 2022) (same); *Benford v. Hall*, No. CV 22-03337-RSWL-ASx, 2022 WL 20273588, at *3 & n.3 (C.D. Cal. July 18, 2022) (same).

Because Plaintiff was provided an opportunity to remedy his pleadings to demonstrate that exceptional circumstances do not warrant declining supplemental jurisdiction over his Unruh Act and related state law claims or that other compelling reasons favor exercising supplemental jurisdiction, and he has failed to do so, the undersigned recommends against exercising jurisdiction over Plaintiff's Unruh Act, CDPA, and related state causes of action.  Further, after noting Plaintiff's deficiencies in his pleading and granting him leave to amend (*see* Doc. 43), Plaintiff failed to file an amended complaint correcting the noted deficiencies.  Accordingly, the

undersigned assesses that leave to amend would be futile.  *See Hartman v. CDCR*, 707 F.3d 1114, 1129-30 (9th Cir. 2013).

### C.      Failure to Obey Court Orders and Failure to Prosecute

Apart from Plaintiff's failure to state a claim upon which relief may be granted, he has failed to comply with this Court's order to file an amended complaint and, as such, has failed to prosecute this action.  Accordingly, the undersigned will recommend Plaintiff's complaint be dismissed on this separate, independent ground.

### 1.      Governing Authority

Local Rule 110, corresponding with Federal Rule of Civil Procedure 11, provides that "[f]ailure of counsel or of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions . . . within the inherent power of the Court."  E.D. Cal. Local Rule 110.  The Court has the inherent power to control its docket and may, in the exercise of that power, impose sanctions where appropriate, including dismissal of the action.  *Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 841 (9th Cir. 2000).  A court may dismiss an action based on a party's failure to prosecute an action, obey a court order, or comply with local rules.  *See, e.g., Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (dismissal for failure to comply with a court order to amend a complaint); *Malone v. U.S. Postal Service*, 833 F.2d 128, 130-31 (9th Cir. 1987) (dismissal for failure to comply with a court order); *Henderson v. Duncan*, 779 F.2d 1421, 1424 (9th Cir. 1986) (dismissal for failure to prosecute and to comply with local rules).

"In determining whether to dismiss an action for lack of prosecution, the district court is required to weigh several factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."  *Carey v. King*, 856 F.2d 1439, 1440-41 (9th Cir. 1988) (internal quotation marks & citation omitted).  These factors guide a court in deciding what to do and are not conditions that must be met in order for a court to take action.  *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1226 (9th Cir. 2006) (citation omitted).

1        2.        Analysis

2        Here, Plaintiff has failed to comply with the Court's orders and Local Rules.  Plaintiff has

3   filed no response to the Court's order granting him leave to amend his complaint and the time to

4   do so has passed.  There are no other reasonable alternatives available to address Plaintiff's

5   failure to respond and otherwise obey this Court's orders.  Thus, the first and second factors—the

6   expeditious resolution of litigation and the Court's need to manage its docket—weigh in favor of

7   dismissal.  *Carey*, 856 F.2d at 1440.

8        The third factor, risk of prejudice to Defendants, also weighs fairly in favor of dismissal

9   since a presumption of injury arises from the occurrence of unreasonable delay in prosecuting an

10  action.  *See Anderson v. Air W.*, 542 F.2d 522, 524 (9th Cir. 1976).  This matter cannot proceed

11  further without Plaintiff's participation to prosecute the case and file an amended complaint

12  curing the deficiencies identified in the Court's first screening order.  The presumption of injury

13  holds given Plaintiff's unreasonable delay in prosecuting this action.  Thus, the third factor—a

14  risk of prejudice to the Defendants—also weighs in favor of dismissal.  *Carey*, 856 F.2d at 1440.

15       The fourth factor usually weighs against dismissal because public policy favors

16  disposition on the merits.  *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002).  However,

17  "this factor lends little support to a party whose responsibility it is to move a case toward

18  disposition on the merits but whose conduct impedes progress in that direction."  *In re PPA*, 460

19  F.3d at 1228.  Plaintiff has not moved this case forward toward disposition on the merits.  He has

20  instead failed to comply with this Court's orders and the Local Rules and, thus, is impeding the

21  progress of this action.  Therefore, the fourth factor—the public policy favoring disposition of

22  cases on their merits—also weighs in favor of dismissal.  *Carey*, 856 F.2d at 1440.

23       Finally, the Court's warning to a party that failure to obey the court's order will result in

24  dismissal satisfies the "considerations of the alternatives" requirement.  *Ferdik*, 963 F.2d at 1262.

25  Here, the Court's order granting Plaintiff leave to amend and requiring a response from Plaintiff

26  cautioned: "**If Plaintiff fails to timely comply with this order, the Court will recommend that**

27  **this action be dismissed for failure to state a claim, failure to obey a court order and/or**

28  **failure to prosecute.**"  (Doc. 43 at 17).  Plaintiff was adequately forewarned that the failure to

17

timely file an amended complaint could result in terminating sanctions.

**IV.    Conclusion and Recommendation**

For the reasons given above, **IT IS RECOMMENDED** as follows:

1.  The Court DISMISS this action with prejudice for Plaintiff's failure to state a claim upon which relief may be granted and futility of further amendment, or in the alternative, without prejudice for his failure to prosecute this action and to comply with the Court's orders and Local Rules. *See* Local Rule 110; and

2.  The Clerk of the Court be DIRECTED to close this case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections, but a party may refer to exhibits in the record by CM/ECF document and page number. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **July 10, 2025**

UNITED STATES MAGISTRATE JUDGE